**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FATIMA S. *on behalf of* G.G.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-18192 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Fatima S.'s[1] ("Fatima" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, who denied Fatima's request for supplemental security income ("SSI") on behalf of her minor daughter G.G. ("G.G." or "child").[2] (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff raises a single issue for the Court to address: Did Administrative Law Judge Richard West (the "ALJ" or "Judge West") properly determine that G.G.'s impairments did not meet or medically equal an impairment on the Commissioner's medical listings (the "Listings")?

### A. PROCEDURAL POSTURE

On April 7, 2022, Fatima filed an application for childhood disability on behalf of G.G.,

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

[2] The Court refers to minors only by their initials. *See* Fed. R. Civ. P. 5.2(a)(3); Local Civ. R. 5.2(17)(3).

alleging an onset date of February 5, 2016. (Administrative Record ("AR") at 17–18, 173–74.)[3] G.G. was 14 years old at the time of the application filing. (*Id.* at 18, 56.) The Social Security Administration (the "Administration") denied the request both initially, (*id.* at 74–77), and on reconsideration, (*id.* at 79–82). Thereafter, Fatima requested a hearing before an ALJ. (*Id.* at 83.) On September 11, 2024,[4] Judge West held a telephone hearing and heard testimony from both Fatima and G.G., who were represented by counsel. (*Id.* at 31–54, 152.) On November 25, 2024, Judge West issued a written decision finding that G.G. was not disabled. (*Id.* at 17–24.) The Administration's Appeals Council denied Fatima's request to review Judge West's decision on October 7, 2025. (*Id.* at 1–3.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on the docket on January 30, 2026. (ECF No. 4.) Fatima submitted a brief in support, ("Pl. Br.," ECF No. 5), and the Commissioner opposed, ("Opp.," ECF No. 7).

### B. JUDGE WEST'S DECISION

As stated in his November 25, 2024 decision, Judge West found G.G. not disabled under the prevailing Administration regulations. (*See generally* AR at 17–24.) To reach this decision, Judge West analyzed G.G.'s application under the three-step process for determining whether an individual under the age of 18 is disabled, as set forth in 20 C.F.R. § 416.924.

At Step One, Judge West found that G.G. had not engaged in substantial gainful activity since the application date of April 7, 2022. (*Id.* at 18 (citing 20 C.F.R. §§ 416.924(b), 416.971 *et seq.*).) At Step Two, Judge West found that G.G. suffers from three "severe" impairments: bilateral

[3] The Administrative Record ("Record" or "AR") is available at ECF Nos. 4-1 through 4-9. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

[4] Judge West's decision states that the hearing was on September 11, *2023*, which appears to be a typo inconsistent with the broader record. (AR at 17, 31–54, 152.) The date of the telephonic hearing has no bearing on the instant appeal.

sensorineural hearing loss, major depressive disorder, and generalized anxiety disorder. (*Id.* (citing 20 C.F.R. § 416.924(c)).) Judge West concluded that ample medical evidence in the record indicates that these conditions have caused "more than minimal functional limitations." (*Id.*) Specifically, Judge West identified that September 2022 medical testing at Princeton Eye and Ear documented G.G.'s bilateral hearing loss, (*id.* (citing AR at 288–95)), and that extensive treatment records from Stress Care of New Jersey indicated G.G.'s medical diagnoses for major depressive disorder and generalized anxiety disorder, (*id.* (citing AR at 296–469)).

However, at Step Three, Judge West determined that G.G.'s "impairment or combination of impairments" did not meet, medically equal, or functionally equal the severity of any impairment on the Listings. (*Id.* at 18–23 (citing 20 C.F.R. § 404, Subpart P. App. 1).) In reaching this conclusion, Judge West first gave consideration to whether G.G.'s bilateral sensorineural hearing loss met the requirements of Listing 102.10. (*Id.* at 19.) Listing 102.10 concerns "[h]earing loss not treated with cochlear implantation" and requires, for children from age 5 to 18, evidence of the following:

> (1) An average air conduction hearing threshold of 70 decibels or greater in the better ear and an average bone conduction hearing threshold of 40 decibels or greater in the better ear; or
> (2) A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words; or
> (3) An average air conduction hearing threshold of 50 decibels or greater in the better ear and a marked limitation in speech or language.

20 C.F.R. § 404, Subpart P, App. 1 ¶ 102.10 (cleaned up). Based on the record before him, Judge West determined "there is no evidence to show" that G.G.'s hearing loss met these empirical criteria. (AR at 19.)

Judge West next considered whether G.G.'s major depressive disorder and generalized anxiety disorder met the requirements of Listings 112.04 and 112.06. (*Id.* at 19.) Both Listings

require medical documentation of the disorder along with one "extreme" or two "marked" limitations in the areas of understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; or adapting and managing oneself. *See* 20 C.F.R. § 404, Subpart P, App. 1 ¶¶ 112.00(b)–(c), (explaining requirements for mental disorder Listings), 112.04(a)–(b) ("[d]epressive, bipolar and related disorders"), 112.06(a)–(c) ("[a]nxiety and obsessive-compulsive disorders"). Judge West determined that record evidence did not show G.G.'s depression "result[ed] in two marked or one extreme limitation in functioning" or that her anxiety "causes marked restrictions in the number of required areas of functioning." (AR at 19.) Alternatively, a claimant can meet these Listings by showing that their mental disorders are "serious and persistent," which requires a "medically documented history of the existence of the disorder over a period of at least 2 years." *See* 20 C.F.R. § 404, Subpart P, App. 1 ¶ 112.00(c) (applying "serious and persistent" standard to Listings 112.04 and 112.06). Based on his review of the record, Judge West concluded that there is "no evidence that the claimant's mental disorder has been 'serious and persistent' for two years" as required for this separate basis. (AR at 19 (quoting 20 C.F.R. § 404, Subpart P, App. 1 ¶ 112.00(c)).)

Judge West next determined that G.G. did not have an impairment or combination of impairments that *functionally* equaled the severity of any Listing. (*Id.* at 19 (citing 20 C.F.R. §§ 416.924(d), 416.926(a)).) Evaluating G.G. as a "whole child," (*see* AR at 19 (citing SSR 09-1p)), Judge West concluded that the child has (1) "less than a marked limitation in acquiring and using information;" (2) "less than a marketed limitation in attending and completing tasks;" (3) "no limitation in interacting and relating with others;" (4) "no limitation in moving about and manipulating objects;" (5) "less than a marked limitation in the ability to care for herself;" and (6) "less than a marked limitation in health and physical well-being." (AR at 20–23.)

In reaching this determination, Judge West relied on the disability and function report Fatima submitted on behalf of G.G. (*Id.* at 20–21 (citing AR at 186–200).) Judge West found this report indicated that although G.G. had "problems hearing," she was "not totally unable to talk" and her "daily activities were not limited." (*Id.* at 20–21 (citing AR at 193–95).) Moreover, G.G. "was able to do almost everything normally" with her hearing aid. (*Id.* at 21 (citing AR at 195).) Judge West further noted that Fatima reported G.G. is "depressed at times" because other children are mean to her at school. (*Id.* (citing AR at 197).)

Judge West also considered the testimony of Fatima and G.G. at the telephone hearing before him. (*Id.*) Fatima testified that G.G. "has hearing loss of about 35 to 40% which is permanent," (*id.* (citing AR at 39)), and that due to her hearing loss, G.G. was depressed, (*id.* (citing AR at 40)). G.G. testified that she had to ask people to repeat things because her hearing aids do not fully work and that she struggles at times with how words are pronounced. (*Id.* (citing AR at 46).) She further testified that she had anxiety at school due to her hearing challenges. (*Id.* (citing AR at 46).) Judge West concluded that although G.G.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [G.G. and Fatima's] allegations concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 21.)

Judge West reviewed the claimant's school records dating back to October 2021, which documented that G.G. was in a special education program and "receive[d] inclusion for five hours a week and assistance in a resource room for 20 hours a week." (*Id.* at 22 (citing AR at 214–57).) G.G.'s teacher noted that she had problems acquiring and using information, attending and completing tasks, and caring for herself, but reported no limitations interacting and relating with others or moving and manipulating objects. (*Id.* (citing AR at 219–23).) The school psychologist

found G.G. had difficulty across these same areas, but noted that the problems were, at worst, only "slight." (*Id.* (citing AR at 485–89).) G.G.'s full-scale IQ of 94 placed her within the "Average" range of functioning. (*Id.* (citing AR at 499).)

Judge West additionally considered G.G.'s medical records. (*Id.*). He found that a hearing test from July 29, 2021 documented G.G.'s bilateral sensorineural hearing loss. (*Id.* (citing AR at 294–95).) This test, performed by Princeton Eye and Ear, indicated average hearing thresholds of 35 dB in her right ear and 37 dB in her left ear, with a 100% "excellent" word recognition score. (*Id.* at 295.) The ALJ also reviewed G.G.'s mental health treatment records with Stress Care of New Jersey, dating back to July 2020, which contained diagnoses of major depressive disorder and generalized anxiety disorder. (*Id.* (citing AR at 297–469).) Judge West noted that the treatment records stated that G.G. had at times expressed suicidal thoughts "when told no" by her mother, (*id.* (citing AR at 311, 332, 841–42, 973),) but these symptoms subsided by late 2021, (*id.* (citing AR at 325 (denying any thoughts of suicidal ideation in October 2021), 367 (same in December 2021)). Fatima also reported that by fall of 2021, G.G. was "happy" and "taking care of herself." (*Id.* (citing AR at 325, 367).)

Finally, Judge West reviewed the medical opinions of two state medical consultants. (*Id.* at 23 (citing AR. at 56–69).) Based on an independent review of the medical record, both medical consultants found that G.G.'s physical and mental impairments resulted in a less than marked limitation to G.G.'s health and physical well-being, and no limitations as to the other five functional domains.[5] (*Id.* (citing AR at 59–60, 65–67).) Although Judge West agreed that G.G. had a less than marked limitation in her health and physical well-being, he disagreed with the state

[5] As noted above, the six relevant domains in the functional equivalence analysis are (1) acquiring and using information, (2) attending and completing tasks (3) interacting and relating with others, (4) moving about and manipulating objects, (5) the ability to care for oneself, and (6) health and physical well-being. (AR at 19–20 (citing 20 C.F.R. § 416.926a; SSR 09-2p).)

medical consultants' conclusions regarding G.G.'s ability to acquire and use information, attend and complete tasks, and care for herself. (*Id.* at 20, 23.) The ALJ concluded that "the evidence as a whole" is more consistent with a finding that G.G.'s severe mental impairments led to less than marked limitations in these three domains as well. (*Id.*)

Nonetheless, based on his assessment of all evidence in the record, Judge West concluded that G.G. "does not have an impairment or combination of impairments that functionally equals a listing" because G.G. does not exhibit "marked" limitations in any two domains of functioning or "extreme" limitation in any single domain. (*Id.* at 23.)

This appeal solely concerns Judge West's assessment at Step Three that G.G.'s impairment did not meet or medically equal the Commissioner's Listing.[6] (*See* Pl. Br. at 3–4.) Thus, because "all other issues have been waived," the Court restricts its review to these issues. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases).

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence

---

[6] Plaintiff raises no arguments regarding the ALJ's assessment of *functional* equivalency to the Listings. (*See generally* Pl. Br.) The Court therefore confines its arguments to the *medical* equivalence arguments raised and briefed by the parties.

as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001).

### B. Establishing a Minor's Eligibility for Supplemental Security Income

Determining whether a child claimant is eligible for SSI requires an "abbreviated" version of the adult evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 526 (1990). A child under the age of 18 is disabled for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To assess whether a child is eligible for SSI, the ALJ applies a three-step evaluation process, which requires determining:

> (1) that the child is not working; (2) that the child had a "severe" impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings.

*T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 F. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924). The burden of proof rests on the claimant at each of the three steps. *Drayton v. Astrue*,

No. 09-2886, 2010 WL 2674448, at *6 (D.N.J. June 30, 2010).

## III. DISCUSSION

Plaintiff contends that Judge West committed several errors at Step Three. Specifically, Plaintiff argues that: (1) Judge West did not adequately compare evidence of the child's impairments with specific Listing requirements to determine whether there is a "match," (Pl. Br. at 8–11); (2) Judge West assigned improper weight to the results of the child's July 29, 2021 hearing test results, (*id.* at 11–15); and (3) Judge West failed to analyze the broader medical record, including whether the ALJ assessed all three of G.G.'s severe impairments "in combination" with one another, (*id.* at 15–18).

At Step Three, the ALJ determines whether the minor child's impairment or combination of impairments met the severity of an impairment in the Listings. *See* 20 C.F.R. §§ 416.924, 416.925, 416.926. The Listings are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan*, 493 U.S. at 529–30. The ALJ conducts this analysis as to whether the child's impairment "medically equaled" or "functionally equaled" the severity of an impairment in the Listings. *T.C.*, 497 F. App'x at 160. "For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citing 20 CFR § 416.926(a)) (emphasis in original).

In explaining a Step Three decision, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, the "ALJ's decision must provide some discussion of this determination, so as to make meaningful review of the decision possible." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 813–14 (3d Cir. 2016). This standard is satisfied as long as when "[r]eading the decision as a

whole," the Court finds that "the record and explanation of findings is developed enough to permit meaningful review." *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (citing *Jones*, 364 F.3d at 505).

Judge West identified each specific Listing he considered, explained the criteria for each Listing, and then concluded that no evidence satisfied the bright-line criteria. (AR at 18–19.) Plaintiff claims this analysis is insufficient because Judge West cites no specific evidence. (Pl. Br. 10–11.) This argument is belied by Judge West's considerable discussion of the relevant portions of the record elsewhere in the decision, including G.G.'s hearing loss tests and mental health treatment records. (*See* AR at 18, 22–23) (discussing G.G.'s July 2021 testing results, mid-2020 to late-2021 depression and anxiety treatment records, and the independent opinions of two state medical consultants evaluating the same evidence). Moreover, even if the ALJ had not done this, the form of Judge West's explanation adheres to the Administration's own guidance for written articulation of Step Three decisions. *See* SSR 17-2p ("[At Step Three], the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."). When "read as a whole," it is clear to the Court that the ALJ engaged in "sufficient development of the record and explanation of findings to permit meaningful review of medical equivalence." *Jones*, 364 F.3d at 505.

Plaintiff next argues that Judge West did not accord appropriate weight to an audiogram[7] G.G. received from Princeton Eye and Ear on July 29, 2021. (Pl. Br. 11–12 (citing AR at 294–

---

[7] An audiogram is a medical chart showing the results of hearing tests at a range of frequencies (Hz) and intensities (dB). (*See* AR at 295);

95).) Plaintiff concedes that Judge West did consider this specific hearing test in reaching his decision but contends that the ALJ did not adequately "compare those test results with the requirements of the listing paragraph considered." (Pl. Br. at 13 (citing AR at 22).) Once again, Judge West was not required "adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Regardless, examination of the audiogram at issue only confirms Judge West's analysis. The audiogram indicates that G.G. had an average air conduction (AC) of 35 dB in her right ear and 37 dB in her left ear, below the 70 dB threshold for Listing 102.10(B)(1) and the 50 dB threshold for Listing 102.10(B)(3). (AR at 295); 20 C.F.R. § 404, Subpart P., App. 1 ¶¶ 102.10(B)(1), 102.10(B)(3). Additionally, G.G. had an "excellent" word recognition score of 100% at 70 dB HL, well above the maximum threshold of 40% under Listing 102.10(B)(2). (AR at 295); 20 C.F.R. § 404, Subpart P, App. 1 ¶ 102.10(B)(2).

Judge West's written decision also relies on the opinion of two state medical consultants. (AR at 23 (citing AR at 56–69).) The first consultant, Dr. Katherine Azaro, performed an independent review of the July 29, 2021 audiogram and found—just as Judge West did—that G.G.'s average hearing threshold and word recognition score did not meet the criteria for Listing 102.10. (*Id.* at 60 (finding average hearing thresholds of "35dB on the right and 37dB on the left" and a word recognition score of "100% in each ear").) Based on this evaluation of the medical record, Dr. Azaro concluded that G.G.'s "hearing impairment is less than marked." (*Id.* at 60.) The second consultant, Dr. Durga Gaviola, reached the same conclusion at the reconsideration stage. (*Id.* at 67.) Because the audiogram is entirely consistent with Judge West's Step Three determination, the Court is satisfied that the "ALJ's conclusion was supported by substantial evidence."[8] *T.C.* 497 F. App'x at 162.

---

[8] Plaintiff's brief asserts that the July 29, 2021 audiogram "showed dB HL levels of 30 and 70." (Pl. Br. at 12.) The audiogram indicates no such results. (AR at 295.) Instead, 30 and 70 dB HL are the testing levels

Finally, Plaintiff contends that Judge West analyzed G.G.'s three severe impairments "individually but never in combination." (Pl. Br. at 18.) Not so. Throughout his written decision, Judge West repeatedly stated that he considered the severity of the "combination of impairments." (AR at 18, 19, 23.) "An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008)). Because Plaintiff points to no contrary evidence demonstrating the combinations of G.G.'s three impairments medically equal a Listing, she fails to undermine this presumption. *See id.* Accordingly, the Court finds Judge West's Step Three findings are based on substantial evidence.

---

for the speech reception threshold and word recognition score examinations. (*Id.* (indicating 30 dB as the tested volume for the speech recognition threshold exams and 70dB for the word recognition score exams for both ears).)

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 20, 2026